Thank you, Your Honor, and may it please the Court, Deanne Maynard for Lazare Kaplan International. On remand, the District Court defied this Court's clear case law and its clear mandate. Defied our case law? There's no case law from this Court about Rule 60 in this context, right? The case law, though, Your Honor, is clear. Odedic says that when one fails to appeal... But none of our cases involve Rule 60, right? Odedic does not. Is that correct or not? Yes, Your Honor. Odedic does not... Yes, that's correct, Your Honor. Odedic does not involve Rule 60B. But what the District Court did here is precluded under 60B flows from Odedic. So the law is clear in this Court that if a party fails to appeal an adverse judgment on its invalidity claim, that issue is precluded from further litigation. What case do you have that says that the District Court here used Rule 60B improperly? The Second Circuit's case law, Your Honor, which this Court generally applies to Rule 60B questions, establishes that 60B cannot be used as a substitute for a foregone appeal. I've looked at those cases. Not one of them involves a conditional cross-appeal situation. Isn't that correct? That's true, Your Honor, although they have no case in which any court anywhere has allowed a 60B motion where someone should have appealed but did not. Well, there are cases that haven't been cited from other circuits which seem to say that Rule 60B can be used to reconcile judgments under those circumstances. The question is where somebody could have appealed something they were adversely affected by and they didn't appeal. I think you're right. The case law is clear that you can't come in later and use Rule 60B. But that's not the situation here because it's a conditional cross-appeal. They didn't have the right to appeal originally because there wasn't anything for them to complain about. It's only when the claim construction got changed that they had something to complain about. No, Your Honor, I disagree. They had an adverse judgment against them on the issue of Liddy. It was tried to the jury. The claims were held not invalid. We don't know why the jury concluded that. It was an adverse judgment. It was a crystal clear judgment against the defendants. And the Supreme Court's case law and this case law, this court has held since Radio Steel 30 years ago, you must appeal. Are you suggesting that the invalidity judgment didn't rest on what is now considered to be a flawed claim construction? We don't know why the jury did what it did, Your Honor, but the time to appeal that was when we noted our appeal. That's what this court held in Odetics. No one was surprised by this court's reversal in the claim construction. The defendants were on notice as soon as LKI noticed its appeal. That, as Odetics says, put in play the patentability. They were aware at that point that we were going to challenge the claim construction. It was a summary judgment ruling and a claim construction ruling, so it was going to be reviewed de novo. The likelihood that this court might reverse was well within their power to protect themselves. But the problem is, and this is what the district court fastened on, is that if you win, the result is that a different claim construction will have been used for infringement than is being used for invalidity, right? That's true, but there's nothing unfair about that, Your Honor. It's not. No, Your Honor, because nothing about the rule that this same claim construction usually applies to both trumps ordinary principles of litigation. They were on notice. But doesn't that mean that a patent that was held valid under one claim construction may not be valid under what we later held was a different claim construction? And isn't that against public policy, against allowing potentially invalid patents to just slide through? No, Your Honor. They had the ability to protect themselves against that result by noting a cross-appeal. That's what this court held they had to do in Odetics and what Power MOSFET suggests they should do, conditionally cross-appeal. And there's nothing unfair about holding them to that well-settled principle. In fact, that principle itself, which is founded upon Supreme Court case law going back more than 200 years, is itself a principle of finality and fairness. In other words, rules govern. Rules govern. Yes, Your Honor. And as the Supreme Court held in Green law, the principle of the rule, it puts the parties and the court on notice of what remains in the case. Why wouldn't the reverse construction constitute an extraordinary circumstance? If it did, Your Honor, that would gut the rule of Odetics. Because there's nothing extraordinary about the fact that if you have two judgments, one of non-infringement and one of non-invalidity, and one of those judgments is appealed, that potentially, often in patent cases, they're going to depend on the same claim construction and that the reversal in one may affect the other. That's what this court recognized in Odetics, that that could be the case and that the way that you're to protect yourself is to note an appeal. But we haven't dealt with the Rule 60 problem. I mean, Rule 60B was designed to eliminate the harshness of the notion that you couldn't do anything about inconsistent judgments. And Rule 60B, at least under some circumstances, says if you've got inconsistent judgments, you can use this rule to reconcile them. We haven't addressed Rule 60B in this context yet. That's true, Your Honor, but under Second Circuit case law, and this court has applied the law and so has the Supreme Court, the failure to take an appeal that one could have taken. But none of those cases, as you've said, involve this unusual conditional cross-appeal situation. They are all cases in which there was a direct appeal available, not a conditional cross-appeal. This would not have been a conditional cross-appeal, Your Honor. It wouldn't? Only by choice would it have been a conditional cross-appeal. They could have made it a conditional cross-appeal, but they had a right to appeal. They had a right to appeal. Why would they want to do that? They thought the claim construction was correct. But under Cardinal Chemical, the two judgments are distinct. In other words, they could have appealed even if we hadn't appealed. They could have appealed. We don't know why. They might have had other claims. They would have sort of been laughing at them, right, because they would be saying, oh, well, you should find that we're not infringing under this claim construction, but by the way, that's not the correct claim construction, and therefore you should set aside the invalidity thing. If they're going to defend the claim construction, it has to be a conditional cross-appeal, doesn't it? There might be other grounds to set aside that they might have advanced to set aside the invalidity judgment. The point is that under Cardinal Chemical, the invalidity judgment is itself a separate judgment that was separately appealable to them, not just as a conditional cross-appeal. And I'm unaware of any case in any circuit, Your Honor, where a conditional cross-appeal situation where, as here, the judgment, and I think this is critical, the judgment of non-invalidity was not based in any way on the judgment of non-infringement. Whose law applies here? Is it Second Circuit because it's procedural, or is it Federal Circuit because it's so intimately involved in patent issues, validity, infringement, etc.? Our view is that the Second Circuit law should apply, and Second Circuit law clearly says that Rule 60b-6 is not available in this circumstance where someone has decided not to appeal and now regrets that decision. But even if this Court were to apply this Court's law, I think it should reach the same result because it would be inconsistent with Odetics to reach otherwise. If you were to announce now that this is an extraordinary circumstance, then in every patent case where this is the case, no party will any longer need to follow Odetics. They can wait. They can see how the appeal turns out. If they regret their decision not to conditionally cross-appeal at that point, they can go back and ask it to be set aside. It would gut the rule of Odetics. Well, it's not a terrible thing that we should require that the judgments be consistent, that the use of the same claim construction governs infringement and invalidity. That's been a principle for a long, long time, and you're saying, no, no, we don't have to pay any attention to that. We can win on validity under one claim construction, and we can win on infringement under a different claim construction. Doesn't that strike you as problematic? Well, we think the judgment here was that the patents are valid, so just I don't want to start on that premise. But here, no, Your Honor, the rules of litigation play out that way a lot, where parties suffer from it. In the first appeal in this court, for example, this court didn't reach jury instruction errors that were made because of actions of my client's prior trial counsel. Nothing about the principle that usually the same claim construction applies to both validity and infringement should trump the ordinary rule. There was a mandate issue here where we remanded for further proceedings with respect to infringement. Yes, Judge Lurie, and that is a separate and distinct reason why the judge erred here in reopening the issue, because not only did they not cross appeal, and they didn't raise the argument in this court, and then this court only remanded, opened the limited portion of the judgment of invalidity with respect to Claims 1 and 7. So the only part of the mandate that went back to the district court was Claims 1 and 7, and they had another opportunity to protect themselves. They could have come back and asked this court on rehearing. Don't remand just 1 and 7. Don't remand it just on infringement, because we want to challenge invalidity. I don't think this court should have let them, because I think they were precluded by ODEX, but they could have asked, and they didn't ask there either. Well, in ODEX, the issue was raised and was rejected in the first appeal. Here, the issue wasn't raised and wasn't addressed in the first appeal, so isn't it a little bit more difficult to read the mandate as addressing an issue which was never brought before the court? No, Your Honor. In fact, as this court said in Engle, it would be wrong to let the party that didn't even protect its rights and didn't even raise an issue to fare better than the party that tried. So no, it would be anomalous to allow... They were put on notice by our appeal that validity was potentially going to be back in play. They had ample opportunity to note their appeal, and they didn't. It was well settled under Supreme Court authority and this court's authority in this context that that's what they needed to do. So not just across appeals generally, but in this specific context that they had to do that, and they didn't do it. And if this court were to create a rule of 60B where now that's an extraordinary circumstance, that is not extraordinary. That is not extraordinary. The Supreme Court has rejected much more sympathetic situations as extraordinary. What would be extraordinary is to let them reopen this issue when they didn't cross appeal. This is a principle of repose, getting cases to finality. This case has been pending now for six years. Give us an example of an extraordinary circumstance. What is an example of an extraordinary circumstance? Well, for example, there's a Supreme Court case that the district court cited where the person was imprisoned and ill and poor and counsel-free and didn't appeal. This is not that situation. In fact, there's a Supreme Court case in which a person had counsel but thought they would have to lose their home in order to appeal, and so they forewent an appeal. And the Supreme Court said rule 60B is unavailable to that person. The defendants here are not anywhere nearly as sympathetic as those people, and yet the Supreme Court precluded it there. They had every ability to protect themselves, and they should have done it. What's the test here for an extraordinary circumstance? Is it sympathy? No, Your Honor. It shouldn't turn on the judge's feelings of fair play and equity, which is what the district court did here. If this court is going to reach validity and allow them to relitigate it, there are many disputed facts, and the record here is completely insufficient to hold summary judgment of anticipation, which is entirely fact-bound. They have a hodgepodge of records and a hodgepodge of documents. They claim to say things that it's not at all clear that they say, and the testimony of one witness says very vague and no proof of any actual machining that anticipated. What about the issue of reassignment? Your Honor, the Second Circuit has a really salutary principle. If this court reverses again, as we believe it should, it will have been twice reversed on behalf of the same party. And in those circumstances, it is appropriate to protect the appearance of justice to send this back to someone else. It doesn't require casting any aspersions on the district court judge, but it's time for this case to come to an end. It's been six years. The infringement issue is very simple. They've essentially conceded infringement. The videotape shows the practicing, the embodiment of the claims here, and yet my clients had to go two trips to the district court, two trips to this court, and yet this district court didn't even reach the only question you remanded to him. Ms. Manning, I know you've looked down at your light. Do you want to save the remainder of your time? I would, Judge Lurie. Thank you very much. Mr. Alcock? Thank you, Your Honor. May it please the court, counsel. I want to address three points. One is the Rule 60 point. The second is how that interplays with Odetics, Radio Steel, Engel, and the other cases previously decided by this court on mandate issues. And third, how that plays with the Cardio Pacemaker case. So first, with respect to Rule 60, Odetics or no other case that this court has decided prohibits the use of Rule 60 under this circumstance. And indeed, this is the perfect circumstance for the application of Rule 60 where the prior judgment went up. The basis for the invalidity argument did not exist at the time the prior judgment went up. Indeed, the only argument urged by us before when it was going up was the opposite of the basis for the invalidity argument now asserted. Because, as Judge Dyke pointed out, the claim construction that was argued before on the non-infringement issue was supported by us on the prior appeal. So the district judge, when it gets a case back with a mandate and we have changed the claim construction and said re-decide infringement, does the district judge have a right to say it makes no sense and I'm going to try another issue? Well, that's exactly what Rule 60 was designed for. Rule 60 was designed to allow judgments to be reopened in the case of a mandate coming down or in a number of other different cases when, from the perspective of the district court, which in this circumstance is particularly well-informed on it, renders it inequitable. And, Your Honor, as I'll get to in a moment, the mandate in the first appeal that went down was pretty open, really, compared to the mandate, for example, in the cardiac pacemaker. A remand is warranted for a determination of infringement. That's what prior opinion said. That's what it said. And the mandate in cardiac... That's beyond 60B, which speaks of a case where an earlier judgment has been reversed or vacated. Here it's been vacated with instruction. Right. But, for example, in cardiac pacemaker, this court remanded and said reinstitute the validity finding and only decide infringement and damages. Yet the court indicated that it was appropriate for that judge, even without Rule 60, to consider the impact of the changed claim construction and the invalidity finding that this court ordered to be reinstituted. Could that have happened here? Are you suggesting that if there hadn't been a Rule 60B motion that the issue of invalidity could have been reopened? That seems to me to be a hard argument. I'm not suggesting that. That is what happened in cardiac pacemakers, where at least the invalidity issue was considered back downstairs on a motion for summary judgment without Rule 60. But I'm not considering that. I'm not arguing that. Here there is a Rule 60. I was just making that point with respect to whether or not the mandate precluded Rule 60, and I think it doesn't for two reasons. One is Rule 60 grants the trial court the equitable power to take the judgment as it's returned and determine whether or not that judgment as it's returned has any unequitable bearing on the balance of the judgment that preexisted and if so, make a change in the balance of the judgment preexisted. But secondly, under cardiac pacemaker, this court with a much more extreme limited and direct mandate ruled that the district court still could consider the impact of a changed claim construction because that was the fair thing to do. And that's what this court did in cardiac pacemaker. So my first point really is that Rule 60, the basis for the rule is that the judgment is final and there's no more appeals and it's done and that there's some unfairness inherent with either the latest thing that happened with respect to the appellate court or with respect to some other issue. Unfairness is a vague subjective concept and that's why we have rules so that appellants, litigants, parties know what to do rather than just saying it's unfair. Well, but Your Honor, here it applies under Rule 5 or Rule 6 of Rule 60B that it is unfair for the party down below to be subjected to an infringement determination with a broad claim construction and an invalidity determination with a narrow claim construction. And Your Honor, by the way, that could not have been effectively managed in the first appeal because the court's new claim construction came out as a result of the first appeal. And so it truly would have been a conditional cross appeal that was a meaningless piece of paper because the whole argument... It could have been not meaningless. You could have had the cross appeal just to protect your interest in the event something like this was to occur and that seems to be pretty much the practice of many practitioners. Well, Your Honor, it wasn't... But what I was saying was in meaningless, it would have not changed one iota. Yeah, but you did have a mechanism for protecting yourself in the first appeal and you didn't take it up. That's correct. And the question is whether that's fatal to you under Rule 60. That's correct. That's correct. And I was just pointing out that it wouldn't have changed the first appeal one iota in terms of the positions the parties took in the briefing or anything like that. It was only... Because who knows what claim construction... It would have changed in this respect. I mean, we wouldn't be arguing this case today. Oh, absolutely we would, Your Honor, because we didn't know what claim construction this court was going to come out with until it came out with it, and that was after the briefing and the whole first appeal. So, I mean, that's the critical thing here. This court changed the claim construction 180 degrees on one issue. In the first appeal, we were vehemently arguing the trial court's claim construction was correct. This court changed it 180 degrees on one issue. We didn't know what position they were going to take until after... How do you get 180 degrees? Well, whether or not manual... Was it a question of manual versus automatic? Right. Right. Absolutely critical. I mean, it is the distinguishing factor with respect to the two pieces of prior art that were below. Let me ask you. We have our debits. That's a good hold, a clear holding. Almost by definition, it's a good holding. It comes from the court. It hasn't been overruled in bank. If we put a Rule 60 gloss on it, aren't we undermining our own holding? No. No, Your Honor. And that was my second point that I was going to get to. Odetics, Radio Steel, and Engel, and even the other cases that they've cited, all involve a situation where the party is defending a win below. And then, for example, in Radio Steel, on appeal they say, Oh, even if we don't win on the grounds that we're defending, we can win on invalidity as well. And this court said, No. If you want to make an invalidity argument on appeal, you need to file a cross appeal. But they had the cross appeal on the basis that they were arguing available to them at the time. Same in Odetics, as Judge Dyke pointed out. They raised the 102B issue the first time around. Now, they didn't file a cross appeal on it, and that was pointed out to them the first time around. But it was available to them the first time around. Even in Engel, where the issue was the availability of contractual relief in the event they prevailed on the appeal, the availability of contractual relief on an issue in which they prevailed on was an additional remedy that they were asking for that would have required the availability of a cross appeal. They didn't cross appeal because they won on infringement. They won on infringement. That's correct. They could have filed a cross appeal and said that was correct, but we should have won on validity because the claim construction was wrong, and therefore under a proper claim construction, which of course they didn't know at the time, but the issue was clearly there, under a proper claim construction, the patent would have been imbalanced. In that sense, Your Honor, it's just like Radio Steel. Whereas at the time of the appeal, they had the infringement, non-infringement issue, and the invalidity issue before them, they could have cross appealed on the invalidity issue. And in Odetics, they clearly had the 102B issue in front of them on the first appeal because they raised it on the first appeal, they just didn't cross appeal. Here, the basis for the invalidity issue now did not exist at the trial court level in the first trial. It did not exist. It could have existed as an argument. I concede, Your Honor, there are many hypothetical claim constructions, and you have before you now two additional ones urged by LKA on appeal, two different additional claim constructions that you're aware of. Hypothetical ones, no one's decided them. So it's true, I'm not saying that there weren't hypothetical claim constructions that could have been subject to a cross appeal in discussion. What I'm saying is the actual claim construction that this court came out with and that is forming the basis for the invalidity argument now was not in the record or existent at the time of the first appeal. And so that's why it's entirely appropriate for Rule 60B to be used because the first time that was an actual issue in the case is when it was returned after this court granted it in the mandate. And it's not a... The first time it was an actual as opposed to potential issue. That's exactly right. One potential among quite a number of other potentials. And so that's why I say it would have had no impact on the first appeal because there was a wide variety of issues that could have been argued. It was sort of like the Power Mosfet case where there was a conditional cross appeal with four or five different constructions argued. And what did the Federal Circuit do with it? The Federal Circuit said, look, those are all hypothetical. Go back to the trial court and figure out which one is really it. If you had cross appeal, wouldn't that have forced this court to address those particular issues in its mandate or opinion? No, Your Honor, it wouldn't have because... At minimum, dismissing your cross appeal. Well, I mean, look, it's hypothetical, so I don't know. I mean, what could have happened? No, we're dismissing it as moot. An appeal is an appeal, and a cross appeal is an appeal. Right. The point I'm saying is that the filing of that piece of paper would have had no bearing on the argument or briefing in the first hearing. None. Because our position was the trial court was right on the claim construction. Under that claim construction, we didn't have a basis for invalidity, and I'm not going to stand in front of you and argue that the trial court... But don't you think if the court changed the claim construction and had had the cross appeal before it on the validity question, it would have appreciated that the claim construction may have had some relevance to... It's possible. It's possible, but I don't know whether the filing of the cross appeal would have had any bearing on that at all. I mean, I don't know. Assuming we were to say as a court in response to that that it would have had bearing, that we would have had to address your cross appeal one way or the other. I don't think it changes the issue that's before the court right now, which is when the trial court is... It takes it out of a mandate. We no longer have a mandate issue. Now it's just a pure Rule 60 issue. And then the question comes up is, is this really an extraordinary circumstance? I see. Well, Your Honor, I don't believe that there is a mandate issue because as I indicated, under the Cardinal Pacemaker case, under a much more restricted direction to the trial court, this court found that it was within that mandate for the trial court to consider the impact of a changed claim construction on the validity issue when... So you see this case purely as a Rule 60 issue. Then let me ask you this question. Why, if it's practiced within the trade bar or the pen bar, excuse me, to file these type of protective appeals, why would not filing one be an extraordinary circumstance under Rule 60? Oh, I don't think that gives rise to the extraordinary circumstance. The extraordinary circumstance is that you've got a situation here where the defendant is subject to an infringement result based on one claim construction and an invalidity decision based upon a radically different claim construction that are inconsistent. That's the extraordinary circumstance, which is unfair and which really, frankly, doesn't happen that much. Thank you. Thank you, Your Honor. Ms. Maynard has little time. Would you, perhaps you with a lot of questions, take two minutes. Thank you, Your Honor. Ms. Maynard, just before you start, let me give you these two cases that I mentioned earlier that I think are inconsistent with your position so that if you want to, you can say something about them. One is Evans v. City of Chicago, 10-474, and the other one is Jackson v. Jackson, 276-501. Those are both cases in which the party bringing the Rule 60 motion could have done something about it at an earlier stage to fix the problem but didn't. You're not promoted. I'm standing here, Your Honor. I'm sorry. What circuit are they from? You can submit a supplemental statement if you choose. I didn't want you to be blindsided by the cases. Thank you. I appreciate that. The only case of which I'm aware, which isn't either of those, is a fifth-circuit case where a distinction would be, and if it's in these cases, then they would also be distinguishable on the same ground, which is that where the first judgment that was set aside on appeal was actually the predicate for the judgment that's set aside here. In other words, more like a 60-B-5, a real 60-B-5. But that's not what's going on here. This Court's ruling on the claim construction was not a surprise to anybody that that could happen. That's what Odedic says. Odedic says when the appeal is brought, that puts the other party on notice that patentability is potentially going to be back in play. And if they want to increase the judgment, there's a final judgment against them on non-ability. If they want to increase the judgment, the rights in their favor, or decrease them at the expense of their adversary, which is exactly what's happening here, they have to cross-appeal. And they didn't do that. And here, if this Court allows this to be a 60-B question, you're essentially telling the Court judges that they can just disagree with this Court's authority and then use 60-B as an extraordinary circumstance. This is not extraordinary, Judge Rainey. This Court's authority doesn't address the rule 60-B problem. It does to this degree, Judge Dyke, which is that it's black-letter law in this circuit that in this situation, the party who has the judgment against them on their invalidity claim should note a cross-appeal. And that rule is consistent with 200 years of Supreme Court precedent. And it's based on principles of judicial repose and private peace, not just judicial efficiency. LKI was entitled to know if that issue was still in play or not. They had lots of notice that it could potentially be, by virtue of our appealing the summary judgment ruling. We were disputing claim construction rulings. They've been disputed all along in this case. This is not a surprise. This is not something new that just popped up when this Court issued its decision. Thank you, Ms. Maynard. We'll take the case under review. Thank you, Your Honor.